Claudine D. Oxley v. Victor H. Oxley, Appellant.

*Divorce—Indignities to the person—Evidence.*

A wife is entitled to a divorce where the evidence shows that she was subjected to an almost continuous course of ill treatment for four years; that her husband used profane and vulgar language to her, called her a liar and a fool in the presence of their friends, made frequent threats to kill her and to shoot her, some made when he had a revolver in his hand or about his person, and on one occasion knocked her down in her home, charged her in the presence of friends with unchastity, and falsely accused her in the presence of her mother and others with having communicated venereal disease to him.

*Divorce—Answer—Issue—Practice.*

In proceedings in divorce, if respondent desires to offer testimony he should file an answer raising an issue, and this is so, whether he desires an issue to be tried by the court or by a jury. Per MORRISON, J.

Argued May 2, 1899. Appeal, No. 152, Jan. T., 1899, by defendant, from decree of C. P. McKean Co., Dec. T., 1898, No. 162, on libel for divorce. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Libel for divorce.

The facts appear by the opinion of MORRISON, J., which was as follows:

The libellant and respondent in this case are both residents of the city of Bradford, McKean county, having resided there from childhood. They were married February 5, 1893, at Limestone, N. Y., and have both resided in Bradford city ever since. The libellant charges that the respondent has offered such indignities to the person of the libellant as to render her condition intolerable and life burdensome, and thereby forced her to withdraw from his house and family on August 27, 1898.

The subpœna was awarded and made returnable to December term, 1898, was personally served on the respondent, who employed counsel and caused an appearance to be entered for him, but did not file any answer. He appeared with his counsel before the examiner who took the testimony, cross-examined the witnesses who testified on behalf of the libellant, and was

called and testified in his own behalf. The testimony establishes the marriage, and that the parties cohabited together as man and wife until August, 1898, when she abandoned her husband and home, taking their only child with her, and has since resided with her parents in Bradford city. The testimony shows, from 1894 down to the spring of 1898, an almost continuous course of ill treatment of the wife by the husband; many manifestations of ill temper, profane and vulgar language, calling his wife a liar and a fool in the presence of their friends, charging her with unchastity in the presence of friends and acquaintances, accusing her in the presence of her mother and others, of having communicated venereal disease to him, frequent threats to kill her and threats to shoot her, some of these threats made when he had a revolver in his hand or about his person, and on one occasion knocking her down in their home on Park street. Her evidence, which is to some extent corroborated, charges him with forcing her against her will to have sexual intercourse with him when she was ill and confined to her bed. He was also in the habit of becoming intoxicated, remaining out late at night, drinking intoxicating liquors at their home in company with associates that he brought there. And, in one instance, gambling in their house on Sunday against her protests.

When the husband charged his wife with having given him a venereal disease, she, under the advice of her mother, submitted to an examination by Dr. Nichols, and he testified positively that she had no venereal disease. The evidence also shows that the husband consulted Dr. Nichols, at about the same time, and was examined by the doctor, and it is a significant fact that when Dr. Nichols was on the stand the respondent's able counsel did not ask him whether at the time of the examination the husband was suffering from a venereal disease. From the evidence, the inference is strong that the husband had a venereal disease contracted from some person other than his wife. And he testified that he did not believe his wife ever had a venereal disease, and that he did not doubt her chastity. Yet he had charged her in the presence of their friends with having slept with Dr. Gamble during the summer of 1897, at Conneaut. This charge she indignantly denies, but as to the making of the charge by the husband she is corroborated by a witness. In fact, as to most of the important charges against him, she is corroborated.

It seems to us that the proofs brings this case within the principle of Mason v. Mason, 131 Pa. 161, Elmes v. Elmes, 9 Pa. 166, Doan v. Doan, 3 Clark, 7, and Brubaker v. Brubaker, 4 Dist. Rep. 185.

We are convinced that the libellant ought to be divorced from the bonds of matrimony which she entered into with the respondent and a decree will be prepared in due form and signed and filed. ·

We desire to call the attention to the fact that the respondent did not file any answer and yet he appeared before the examiner with his counsel, cross-examined the libellant's witnesses and testified in his own behalf. This is not good practice. Under the law and the rules of this court, if he desired to offer testimony he should have filed an answer raising an issue, and this is so, whether he desired an issue to be tried by the court or by a jury.

*Error assigned* was the decree of the court.

*T. F. Mullin*, of *Mullin & Mullin*, for appellant.—Indignities to the person, such as constitute a ground for divorce, in the absence of personal violence, must consist of unmerited reproach, rudeness, contempt, studied neglect, open insult, abusive acts and language or threats, openly and systematically pursued to an extent which would render life unendurable. The abusive acts and language must be somewhat habitual and continuous, causing extreme and unmerited suffering: Brown on Divorce, 210; Mason v. Mason, 131 Pa. 161; Brubaker v. Brubaker, 4 Dist. Rep. 185; May v. May, 62 Pa. 206; Smith v. Smith, 44 Legal Int. 472; Bean v. Bean, 11 Lanc. Bar, 138; Richards v. Richards, 37 Pa. 225; Butler v. Butler, 1 Parsons, 329; Detrick's App., 117 Pa. 452; Shaw v. Shaw, 17 Conn. 189; Pyle v. Pyle, 10 Phila. 58; Dickenson v. Dickenson, 1 Del. Co. Rep. 293; King v. King, 1 Chester Co. Rep. 17.

*Berry & Edgett*, for appellee, were not heard, but in their printed brief said: The decree was justified by the evidence: May v. May, 62 Pa. 206; McMahen v. McMahen, 186 Pa. 490; Bishop on Marriage and Divorce, sec. 719; Melvin v. Melvin, 130 Pa. 6; Mason v. Mason, 131 Pa. 161; Schlott v. Schlott,

14 Lancaster Law Rep. 201; Avery v. Avery, 5 Pac. Rep. 418; Warner v. Warner, 20 N. W. Rep. 557; Whitmore v. Whitmore, 13 N. W. Rep. 800; Wheeler v. Wheeler, 5 N. W. Rep. 689; Jones v. Jones, 66 Pa. 494; Elmes v. Elmes, 9 Pa. 166.

PER CURIAM, May 15, 1899:

An examination of the record in this case has satisfied us that the learned judge's findings of fact, upon which the decree is based were fully warranted by the evidence duly taken and reported by the learned commissioner appointed for that purpose. There appears to be no ground on which the validity of said decree can be successfully assailed.

Decree affirmed and appeal dismissed at appellant's costs.